UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-62216-CIV-COHN/SELTZER

RANDALL MCELRATH and
MARGARET MCELRATH,

       Plaintiffs,
v.

ABN AMRO MORTGAGE GROUP, INC.
and CITIMORTGAGE, INC.,

       Defendants.
_____/

## ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS

**THIS CAUSE** is before the Court on Defendants ABN AMRO Mortgage Group, Inc. and CitiMortgage, Inc.'s Motion to Dismiss [DE 9]. The Court has considered the motion, Plaintiffs Randall McElrath and Margaret McElrath's response [DE 16], Defendants' reply [DE 20], and the record in this case, and is otherwise fully advised in the premises.

### I. BACKGROUND

On September 7, 2011, Plaintiffs Randall McElrath and Margaret McElrath filed their Complaint [DE 1-1 at 5-25] in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida. On October 13, 2011, Defendants ABN AMRO Mortgage Group, Inc. ("ABN") and CitiMortgage, Inc. ("CitiMortgage") removed the action to this Court. Notice of Removal [DE 1].

The allegations in the Complaint relate to Plaintiffs' purchase of two separate properties: one in Melbourne, Florida (the "Melbourne Property"), and the other in Saint Petersburg, Florida (the "Saint Petersburg Property"). See Compl. ¶¶ 22, 61. Both

properties were financed through loans from ABN.  See id. ¶¶ 22, 61; see also Exhibit A to Complaint [DE 1-1 at 26-41] ("Melbourne Property Note and Mortgage"); Exhibit B to Complaint [DE 1-1 at 42-57] ("Saint Petersburg Property Note and Mortgage").  Due to an assignment, CitiMortgage is the current holder of the loan documents for both properties.  See Compl. ¶¶ 42, 44, 81, 83.

Plaintiffs complain that ABN misled them regarding the value of the properties, CitiMortgage knew of ABN's fraudulent actions, and both Defendants used the assignment procedure to purge the loan documents from ABN's fraud.  See generally id.  Plaintiffs therefore bring six Counts against Defendants.  The first three Counts relate to the Melbourne Property, alleging fraud in the inducement against ABN (Count I) and fraud in the inducement against CitiMortgage (Counts II and III).  Id. ¶¶ 20-58.  The last three Counts relate to the Saint Petersburg Property, alleging fraud in the inducement against ABN (Count IV) and fraud in the inducement against CitiMortgage (Counts V and VI).  Id. ¶¶ 59-97.  Plaintiffs seek damages against both Defendants and equitable rescission of the notes and mortgages on both properties against CitiMortgage.  See id. at 10, 12, 13, 18, 20.

On October 20, 2011, Defendants filed their Motion to Dismiss, seeking to dismiss the entire Complaint with prejudice.  For the reasons stated below, the Court will dismiss the Complaint without prejudice, and Plaintiffs will have an opportunity to replead their claims.

## II. LEGAL STANDARD

Under Rule 12(b)(6), a motion to dismiss lies for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In order to state a claim, Federal

Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007) (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).

At this stage in the litigation, the Court must consider the factual allegations in the Complaint as true, and accept all reasonable inferences therefrom. Jackson v. Okaloosa Cnty., Fla., 21 F.3d 1531, 1534 (11th Cir. 1994). Nevertheless, the Court may grant a motion to dismiss when, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).

### III. ANALYSIS

In their Motion, Defendants make the following arguments: (1) fraud based on a lender's alleged "valuation" is not cognizable; (2) Plaintiffs fail to state a claim for fraud in the inducement; (3) Plaintiffs fail to state a claim for fraud in the inducement against CitiMortgage based on civil conspiracy; (4) the credit agreement statute of frauds bars Plaintiffs' claims; (5) the statute of limitations bars Plaintiffs' claims; and (6) adequate remedies at law preclude equitable rescission. The Court addresses each argument in turn.

### A. Fraud Based on Lender's "Valuation"

Defendants argue that fraud based on a lender's alleged "valuation" is not cognizable. Plaintiffs' claims are based on allegations that ABN induced them into the loan transactions by misrepresenting the value of the Melbourne Property and Saint Petersburg Property. See Compl. ¶¶ 24, 33, 63 72. Plaintiffs contend that their reliance was reasonable because "buyers of real estate customarily rely on the lender's statement of value in both their decision to purchase [property] and their decision to borrow the funds to finance the purchase." Id. ¶¶ 34, 73. In their Motion, Defendants argue that "[t]he notion that lenders investigate the market value of collateral for the benefit of borrowers is false, and contradicted by Florida law." Mot. at 5.

Florida courts recognize that "[i]n the usual creditor-debtor relationship a fiduciary duty does not arise." Watkins v. NCNB Nat'l Bank of Fla., N.A., 622 So. 2d 1063, 1065 (Fla. Dist. Ct. App. 1993). Rather, "the relationship between a bank and its borrower is that of a creditor to debtor, in which parties engage in arms-length transactions." Sussman v. Weintraub, No. 06-20408-CIV-Torres, 2007 WL 908280, at *4 (S.D. Fla. Mar. 22, 2007). "In an arms-length transaction . . . , there is no duty imposed on either party to act for the benefit or protection of the other party, or to disclose facts that the other party could, by its own diligence have discovered." Watkins, 622 So. 2d at 1065. "An appraisal is performed for the benefit of the lending institution," McGee v. First Fed. Sav. & Loan Ass'n of Brunswick, 761 F.2d 647, 648-49 (11th Cir. 1985), and it "would be inconsistent with well-established Florida law to infer a tort duty merely on account of actions undertaken pursuant to the protection of one's own interests," Motorcity of Jacksonville, Ltd. v. Southeast Bank, N.A., 83 F.3d 1317,

1342-43 (11th Cir. 1996) vacated sub nom. Hess v. FDIC, 519 U.S. 1087, reinstated 120 F.3d 1140 (11th Cir. 1997).

      Based on these legal principles, ABN did not have any duty to appraise the properties for Plaintiffs' protection.  By extension, Plaintiffs had no right to rely on the appraisal when deciding whether to purchase the properties.  See Linville v. Ginn Real Estate Co., LLC, 697 Fed. Supp. 2d 1302, 1307 (M.D. Fla. 2010) ("Because a lender owes no duty to others to supervise the development projects it has financed and because Plaintiff expressly disclaimed any reliance on any warranty or representation regarding the property's value by Defendant SunTrust in the loan application, the Court finds that Defendant SunTrust owed no duty of disclosure or otherwise to Plaintiff regarding the inflated appraisal."); see also D.H.G. Props., LLC v. Ginn Cos., LLC, No. 3:09-cv-735-J-34JRK, 2010 WL 5584464, at *9 (M.D. Fla. Sept. 28, 2010) ("the misconduct Plaintiff alleges ultimately relates to the appraisal value obtained by SunTrust for the lot Plaintiff purchased.  However, because the appraisal is for the lender's own benefit, and not for the benefit of the borrower, Plaintiff has failed to adequately allege a negligence duty.").  Accordingly, to the extent that Plaintiffs' claims are based on a right to rely on the appraisal, their claims fail as a matter of law.

      Plaintiffs represent that their claims are not based on their reliance on the appraisal, but rather on the fraudulent nature of "the entire method by which Defendants went about their business of determining value."  Resp. at 11.  Plaintiffs argue that their allegations "concern fraudulent inducement based on the lender's specific and intentional conduct in utilizing a false and fraudulent appraisal strategy."  Id. at 10.  They distinguish their case from the cases cited in Defendants' Motion to

Dismiss because the instant claims "are based in fraud, that is, the active, conscious, intentional misstatement of a fact . . . a lie." Id.  However, as explained below, Plaintiffs have not pled a claim for fraud.

### B. Stating a Claim for Fraud in the Inducement

"To state a claim for fraudulent inducement under Florida law a plaintiff must allege that (1) the defendant made a false statement about a material fact; (2) the defendant knew the statement was false when he made it or was without knowledge of its truth or falsity; (3) the defendant intended that the plaintiff rely and act on the false statement; and (4) the plaintiff justifiably relied on the false statement to his detriment." Barrett v. Scutieri, 281 Fed. App'x 952, 953 (11th Cir. 2008) (quoting Simon v. Celebration Co., 883 So. 2d 826, 832 (Fla. Dist. Ct. App. 2004)).  Additionally claims for fraudulent inducement are governed by Federal Rule of Civil Procedure 9(b), which requires a party alleging fraud to "state with particularity the circumstances constituting the fraud or mistake."  Fed. R. Civ. P. 9(b); Oginsky v. Paragon Props. of Costa Rica LLC, 784 F. Supp. 2d 1353, 1368 (S.D. Fla. 2011).  Under Eleventh Circuit precedent, "Rule 9(b) is satisfied if the complaint [or counterclaim] sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, . . . (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) [it], . . . (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001) (internal quotations and citations omitted).

Defendants argue that the Complaint fails to allege with particularity the first,

Case 0:11-cv-62216-JIC   Document 21   Entered on FLSD Docket 02/13/2012   Page 7 of 16

third, and fourth elements of a claim for fraud in the inducement—that Defendants made a false statement about a material fact, that Defendants intended for Plaintiffs to rely and act on the false statement, and that Plaintiffs justifiably relied on the false statement to their detriment.  Mot. at 10-13.  The Court agrees.  Though, in their Response, Plaintiffs quote and refer back to certain paragraphs in their Complaint suggesting that ABN participated in an appraisal process that constituted fraud, see Resp. at 5-7, 17 (citing Compl. ¶¶ 13, 16, 17, 22-24, 27-30, 32, 35, 39, 61-69, 74-77), Plaintiffs still fail to identify who at ABN allegedly made false factual statements to Plaintiffs, how ABN's allegedly fraudulent appraisal process is tied to their loans, or how they have suffered any recoverable damages.

As to the first element, Plaintiffs have not sufficiently pled that Defendants made false statements about a material fact to Plaintiffs.  Plaintiffs refer generally to an ABN lending officer and loan closing representative who allegedly made the false factual statements, Compl. ¶¶ 23, 62, but they do not specify which lending officer or loan closing representative made the statements.  See Sampson v. Wash. Mut. Bank, No. No. 11-11400, 2011 WL 4584780, at * 3 (11th Cir. Oct. 5, 2011) (holding complaint for fraud based on bank allegedly misrepresenting property values on mortgage market failed to meet Rule 9(b)'s requirement when plaintiff failed to allege, among other things, who made the misrepresentations); United States v. Magellan Health Servs., Inc., 74 F. Supp. 2d 1201, 1216 (M.D. Fla. 1999) (holding complaint insufficient under Rule 9(b) where complaint failed to refer to specific employees who may have been involved in the false claims); see also Thomas v. Pentagon Fed. Credit Union, 393 Fed. App'x 635, 638 (11th Cir. 2010) (affirming district court's dismissal of fraud claim where

plaintiff failed to specify, among other things, the person responsible for making alleged fraudulent omissions).  Additionally, the Melbourne and Saint Petersburg appraisals confirm that ABN did not influence the results of the appraisals, as both appraisers certified that they were not compensated or otherwise influenced to reach any specific result.  See Melbourne Appraisal [DE 9-1] at 6 ¶ 18; Saint Petersburg Appraisal [DE 9-2] at 6 ¶ 18.[1]  The appraisers also both certified that the appraisals were conducted in conformity with the Uniform Standards of Professional Appraisal Practice.  Melbourne Appraisal at 6 ¶ 3; Saint Petersburg Appraisal at 6 ¶ 3.  ABN did not even order the appraisals—the mortgage broker, Bridge Funding, did.  See Melbourne Appraisal at 1; Saint Petersburg Appraisal at 1.  Additionally, and importantly, the Complaint does not contain any factual support that many of the alleged misrepresentations listed were actually false.  See generally Compl.

Regarding the third element, Plaintiffs have not sufficiently pled the intent element required for a fraud in the inducement claim.  As Defendants note, both a loan application and an appraisal are intended for the *lender* (in this case, ABN), and not for the *borrower* (in this case, Plaintiffs).  Therefore, there cannot be an intent to induce Plaintiffs to rely on the appraisals which were prepared not for Plaintiffs but for ABN.

---

[1] Although these appraisals were not attached to the Complaint, Plaintiffs' allegations of improper representations of value and their accusations regarding the allegedly fraudulent appraisal process are central to their claims.  "[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment."  Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997).  Therefore, the Court may consider these appraisals in deciding the instant Motion.

The Complaint does allege that ABN developed and implemented strategies intended to inflate appraisal results, see Compl. ¶¶ 13-17, but the Complaint fails to tie those alleged strategies to Plaintiffs' loans other than the statement that "ABN AMRO performed no meaningful or honest appraisal of the [properties]," id. ¶¶ 32, 71.  Without any allegations that Defendants somehow intended for Plaintiffs to rely on these alleged strategies, the Complaint does not state a claim for fraudulent inducement.

Finally, as for the fourth element, Plaintiffs have not adequately pled damages. Plaintiffs here, like the Plaintiff in Oglesbee v. IndyMac Fin. Servs., Inc., 686 F. Supp. 2d 1313, 1316 (S.D. Fla. 2010), "went to the bank for a loan and came out with a loan." As in Oglesbee, Plaintiffs "cannot now contend that [they were] injured by receiving the very thing that [they] requested."  Id.; see also Azar v. Nat'l City Bank, No. 6:09-cv-400-Orl-31KRS, 2009 WL 3668460, at *4 (M.D. Fla. Oct. 26, 2009) (noting a "fundamental problem that the 'injury' to Azar resulting from the alleged misconduct is that he got precisely the loan he had requested").  Though Plaintiffs do allege, "As a direct result of the actions of ABN AMRO, Plaintiff has sustained damages," Compl. ¶¶ 38, 77, and "As a direct result of the actions of ABN AMRO, Plaintiff has sustained damages," id. ¶¶ 53, 92, such conclusory allegations do not meet the heightened pleading standards of Rule 9(b).  Without any allegations of legally cognizable damages resulting from Plaintiffs' purported reliance on alleged misrepresentations, Plaintiffs have not stated a fraud claim.

Accordingly, as Plaintiffs have not stated a claim for fraud in the inducement, and because each Count in their Complaint is for fraud in the inducement, the Complaint will be dismissed without prejudice, and with leave to amend in accordance with the above

standards.  Because Plaintiffs will have an opportunity to replead, the Court goes on to address the remaining arguments for dismissal.

### C. Civil Conspiracy

Defendants contend that Plaintiffs fail to state a claim against CitiMortgage based on a civil conspiracy theory.[2]  Under Florida law, a civil conspiracy requires "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy."  Charles v. Fla. Foreclosure Placement Center, LLC, 988 So. 2d 1157, 1159-60 (Fla. Dist. Ct. App. 2008).  When the conspiracy allegations sound in fraud, the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies.  See Rhodes v. Omega Research, Inc., 38 F. Supp. 2d 1353, 1355 (S.D. Fla. 1999).

Defendants argue that Plaintiffs fail to allege the first and third elements of a conspiracy.  To plead the first element, Plaintiffs must allege that ABN and CitiMortgage had an agreement.  See Charles, 988 So. 2d at 1159-60.  The Complaint alleges that ABN and CitiMortgage "attempted to use the procedure of assignment of the [Notes and Mortgages] in an impermissible manner to attempt to purge the [Notes and Mortgages] from the fraud perpetrated by ABN AMRO against Plaintiffs," Compl. ¶¶ 46, 85, and "Citi cooperated with ABN AMRO in structuring the [Notes and Mortgages] for

---

[2] Defendants' Motion also argues that Plaintiffs fail to state a claim against CitiMortgage based on successor liability, Mot. at 14, but Plaintiffs respond that they bring their claims under a civil conspiracy theory, not a successor liability theory, see Resp. at 17-20.  Therefore, the Court need not address Defendants' successor liability arguments.

securitization, fractionalization and other risk hedging financial techniques," id. ¶¶ 49, 88.  The Complaint also alleges that "Citi plotted with ABN AMRO in the scheme to defraud," id. ¶¶ 50, 89, CitiMortgage "collaborated with ABN AMRO in the scheme to cause financial harm to Plaintiffs, id. ¶¶ 50, 89, and "[t]he impermissible actions of Citi and ABN AMRO benefit[t]ed each other," id. ¶¶ 50, 89.  However, as Plaintiffs include no factual allegations to support these conclusions, their pleading does not comply with Rule 9(b)'s heightened requirements.  As such, Plaintiffs have not sufficiently alleged an agreement between the parties.

Turning to the third element, Plaintiffs must plead that some overt act was done in pursuance of the conspiracy.  "A conspirator need not take part in the planning, inception, or successful conclusion of a conspiracy.  The conspirator need only know of the scheme and assist in it in some way to be held responsible for all of the acts of his coconspirators."  Donofrio v. Matassini, 503 So.2d 1278, 1281 (Fla. Dist. Ct. App. 1987).  The Complaint alleges that ABN perpetrated fraud against Plaintiffs, and CitiMortgage "acquired the [notes and mortgages] from ABN AMRO with full knowledge and notice of the fraudulent actions perpetrated by ABN AMRO against Plaintiffs."  Compl. ¶¶ 45, 84.  The Complaint also states that the two Defendants worked together to cover up the fraud, id. ¶¶ 46, 85, and that "Citi acted in a manner that is in active complicity with ABN AMRO," id. ¶¶ 47, 86.  Again, without any factual support, these allegations do not meet Rule 9(b)'s pleading standards.  Thus, Plaintiffs have not sufficiently alleged an overt act in pursuance of the conspiracy.

Accordingly, Plaintiffs have not sufficiently stated a claim against CitiMortgage.  However, as stated above, Plaintiffs will have an opportunity to replead.  In their

Amended Complaint, Plaintiffs may also amend their allegations relating to the civil conspiracy theory of liability against CitiMortgage in accordance with the applicable standards.

### D. Statute of Frauds

Defendants next assert that the credit agreement statute of frauds bars Plaintiffs' claims.  Florida law defines a credit agreement as an "agreement to lend or forbear repayment of money, goods, or things in action, to otherwise extend credit, or to make any other financial accommodation."  Fla. Stat. § 687.0304(1).  Pursuant to Florida's statute of frauds governing credit agreements, "[a] debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor."  Fla. Stat. § 687.0304.  "This statute has been labeled a 'new' statute of frauds which was enacted to protect lenders from liability for actions or statements a lender might make in the context of counseling or negotiating with the borrower which the borrower construes as an agreement, the subsequent violation of which is actionable against the lender."  Dixon v. Countrywide Fin. Corp., 664 F. Supp. 2d 1304, 1309 (S.D. Fla. 2009) (quoting Brenowitz v. Cent. Nat'l Bank, 597 So. 2d 340, 342 (Fla. Dist. Ct. App. 1992).

The Complaint alleges that ABN's agents made a number of oral representations leading up to the notes and mortgages, but Plaintiffs signed loan documents at closing that did not contain those terms.  See Compl. ¶¶ 22(a)-(e); 61(f)-(j).  Defendants argue that Plaintiffs cannot base their lawsuit on alleged oral misrepresentations when "disclosure of the truth is subsequently revealed in a written agreement between the parties."  Taylor Woodrow Homes Fla. , Inc. v. 4/46-A Corp., 850 So. 2d 536, 542 (Fla.

Dist. Ct. App. 2003); see also Quintana v. Countrywide Home Loans, Inc., No. 09-20427-Altonaga/Brown, DE 26 at 17-18 (S.D. Fla. May 26, 2009) ("A party has no right to rely upon alleged oral misrepresentations that are adequately covered and expressly contradicted in a late written contract); Mot. at 7-9.

Plaintiffs respond that this statute of frauds does not apply here because the instant claims do not relate to promises to perform in the future. Resp. at 12-14. Similar to Attanasio v. Excel Development Corp., 757 So. 2d 1253 (Fla. Dist. Ct. App. 2000), where the statute of frauds did not apply to allegations that defendants "engaged in tortious conduct prior to, and distinct from, the performance of the contract, and [plaintiffs] were not seeking enforcement of the oral promises," id. at 1254, Plaintiffs here attempt to allege that Defendants made certain misrepresentations to induce them to execute the notes and mortgages and purchase the properties, see Resp. at 14. To the extent that Plaintiffs do not seek to enforce any clause contained in the loan documents, but instead request relief based on injuries they have suffered as a result of Defendants' fraudulent acts that are distinct from the performance of the contract, dismissal based on the statutes of frauds is inappropriate.

### E. Statute of Limitations

Defendants also argue that the statute of limitations bars Plaintiffs' claims. Florida law provides a four-year limitations period for a "legal or equitable action founded on fraud." Fla. Stat. § 95.11(3)(j). The limitations period runs "from the time the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence." Fla. Stat. § 95.031(2)(a).

Any alleged misrepresentations in the Complaint occurred at or prior to the

13

closings on January 25, 2006 and April 20, 2006, well over four years before this action was filed on September 7, 2011.  Nonetheless, the Complaint alleges that Plaintiffs could not have discovered the facts giving rise to their claim until "at the earliest in or about October, 2008 when the business and lending practices of ABM AMRO and other subprime mortgage lenders in general began to reach the public consciousness." Compl. ¶¶ 31, 70.  Defendants contend that Plaintiffs' reliance on the 'public consciousness' is insufficient, Reply at 7, but without any authority in support of this proposition, the Court will not dismiss Plaintiffs' claims based on the statute of limitations.  Rather, taking the allegations in the Complaint as true, the limitations period did not begin to run until October 2008 at the earliest, and this action was filed within four years of that date.  Accordingly, at this stage, the Court will not dismiss the Complaint based on the statute of limitations.

### F. Equitable Rescission

Finally, Defendants argue that Plaintiffs' claims for equitable rescission (Counts III and VI) fail because Plaintiffs have adequate remedies at law.  "[T]he absence of a remedy at law is a required element of the rescission action." Anchor Bank, S.S.B. v. Conrardy, 763 So. 2d 360, 361 (Fla. 4th DCA 1998); Quintana, No. 09-20427-Altonaga/Brown, DE 26 at 19.  "[E]quitable relief is only available where there is no adequate remedy at law; cases in which the remedy sought is the recovery of money damages do not fall within the jurisdiction of equity." Rosen v. Cascade Int'l, Inc., 21 F.3d 1520, 1527 (11th Cir. 1994).  To be "adequate," the remedy at law need not necessarily be successful. Justice v. United States, 6 F.3d 1473, 1482 n.16 (11th Cir. 1993).  The Eleventh Circuit has explained that "inadequacy means only that 'in its

nature or character it is not fitted or adapted to the end in view'; inadequacy does not mean that the remedy is ineffectual." Id. (quoting Thompson v. Allen Cnty., 115 U.S. 550, 554 (1884)).  Thus, "[w]hether [Plaintiffs] succeed[] in any of [their] legal remedies is immaterial; it matters only that they exist." Quintana, No. 09-20427-Altonaga/Brown, DE 26 at 19.

In their response, Plaintiffs cite Federal Rule of Civil Procedure 8(d)(2) for the proposition that "[a] party may set out 2 or more statements of a claim . . . alternatively . . . either in a single count . . . or in separate ones," Fed. R. Civ. P. 8(d)(2), and Rule 8(d)(3) for the proposition that "[a] party may state as many separate claims or defenses as it has, regardless of consistency," Fed. R. Civ. P. 8(d)(2). See Resp. at 20. Plaintiffs suggest that they "may pursue damage remedies against either defendant for their losses resulting from fraudulent inducement relating to the purchase of the properties and execution of the notes and mortgages, and for rescission of the notes and mortgages against the current holder of them." Id.  Plaintiffs are mistaken. See Quintana, No. 09-20427-Altonaga/Brown, DE 26 at 19.  If Plaintiffs can replead their Complaint to state a claim for fraud in the inducement, and if damages are available to Plaintiffs based on those claims, then whether or not Plaintiffs ultimately succeed in their claims for damages, the Court may not grant them equitable relief in the form of rescission.  See id.; see also Rosen, 21 F.3d at 1527; Justice, 6 F.3d at 1482 n.16 Anchor Bank, 763 So. 2d at 361.[3]

---

[3] Further, Defendants suggest that the parties could never be returned to their pre-contract status quo because "[a]lthough rescission would absolve [Plaintiffs] from their obligations under the loan documents, thereby returning them to their pre-contractual status, CitiMortgage would not receive the loaned funds.  At most, it would

15

## IV. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. Defendants ABN AMRO Mortgage Group, Inc. and CitiMortgage, Inc.'s Motion to Dismiss [DE 9] is **GRANTED in part and DENIED in part** in accordance with the above discussion;

2. Plaintiffs' Complaint [DE 1] is **DISMISSED without prejudice**;

3. By no later than **February 27, 2012**, Plaintiffs may file an Amended Complaint in accordance with the above standards;

4. Defendants' Answer will be due 14 calendar days from the filing of an Amended Complaint;

5. **Failure to file an Amended Complaint by February 27, 2012 will result in the closing of this case**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 13th day of February, 2012.

JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF

---

receive title to the properties." Reply at 9. "Generally, a contract will not be rescinded even for fraud when it is not possible for the opposing party to be put back into his pre-agreement status quo condition." Vision Bank v. Luke, No. 5:10cv45/RS-MD, 2010 WL 2639626, at *2 (N.D. Fla. June 29, 2010).